JONES, JUDGE:
Following a jury trial in Hardin Circuit Court, the Appellant, Tyrice Adams, was found guilty of the following offenses: (1) first-degree fleeing or evading police; (2) operating a motor vehicle while under the *586 influence of alcohol or other substance that impairs driving ability; and (3) first-degree wanton endangerment. The Hardin Circuit Court entered a judgment of conviction consistent with the jury's verdict and sentenced Adams to serve a maximum sentence of six years. Adams now appeals to this Court as a matter of right. He raises four issues on appeal that he maintains warrant reversal and remand: 1) the trial court's refusal to grant a continuance; 2) suppression of his medical records; 3) Officer Smith's testimony concerning the mechanics of the Chevy Impala Adams was driving at the time of the incident in question; and 4) a violation of double jeopardy. The third issue is dispositive, and the first two issues are unlikely to resurface in the event the Commonwealth retries Adams. Therefore, we limit are our review to issues three and four. Having reviewed the record in conjunction with all applicable legal authority, we vacate the judgement against Adams and remand this matter to the Hardin Circuit Court.
I. BACKGROUND
On September 13, 2015, Adams was traveling from Louisville, Kentucky, to Radcliffe, Kentucky; he was driving a 2004 Chevy Impala. Once Adams arrived in Radcliffe, he observed and approached a safety checkpoint, which had been organized by Radcliffe Police Department Sgt. Brandon Jones. Adams stopped his vehicle at the checkpoint. Officer Vernie Curl, the Chief of West Point Police Department, made his way to Adams's stopped Chevy Impala. Chief Curl requested Adams's license and registration. At that point, Adams's tires squealed, and his vehicle left the checkpoint. Officers at the scene gave chase. They pursued Adams for about a mile. The pursuit ended when Adams's vehicle crashed into a tree.
After the crash, Adams exited his vehicle and fell to the ground. Adams attempted to get up. But, before he could, he was taken down by police. Adams became unresponsive, and EMS was called. Adams was transported by ambulance to Hardin Memorial Hospital for treatment. Subsequently, Adams was placed under arrest, charged and indicted with: (1) first-degree fleeing or evading police; (2) operating a motor vehicle while under the influence of alcohol or other substance that impairs driving ability; and (3) first-degree wanton endangerment. Adams's trial commenced on April 20, 2016. At trial, various police officers, who were present and assisted at the checkpoint, testified regarding the events of September 13, 2015. Chief Curl testified that when Adams pulled up to the checkpoint, Chief Curl approached Adams's driver side window, at which point Adams hit the gas and drove off. Chief Curl indicated he returned to his cruiser to give chase, along with several other police officers.
Sgt. Jones, who was also present at the scene, testified that he heard squealing tires approximately twenty to thirty feet behind him and someone yelling "Hey." Sgt. Jones explained that he then turned his cruiser around and joined the pursuit. Sgt. Jones testified that the pursuit "hit triple digits" and lasted for approximately one mile, at which point Adams's vehicle crashed into a tree. Sgt. Jones then witnessed Adams climb out of the driver side window of his vehicle and fall to the ground. Sgt. Jones stated that Adams then ran to the front of his vehicle and into a parking lot. Sgt. Jones stated he pulled into the parking lot behind Adams, at which point Adams again fell to the ground. When Adams attempted to get up again, Sgt. Jones took him to the ground. Sgt. Jones then placed Adams in handcuffs and asked Officer Clennon Smith to take over the scene so that he could return to *587 the checkpoint. Sgt. Jones recalled that Adams was only wearing one shoe.
Officer Smith testified that he was also present at the checkpoint when he heard tires spinning and someone yell out "Hey." Officer Smith joined the pursuit for Adams. Officer Smith stated that he arrived soon after Adams had crashed his vehicle. He witnessed Sgt. Jones get out of his vehicle, put his arms around Adams, and take Adams to the ground. According to Officer Smith, Adams was unresponsive, and EMS was called. EMS transported Adams to the hospital, accompanied by Officer Smith.
Officer Smith remained with Adams at the hospital. Officer Smith testified that Adams began making various statements. Officer Smith testified that Adams admitted to a nurse that he had taken some of his girlfriend's pain medications. Officer Smith described Adams as having slurred speech and bloodshot eyes. He noted that Adams declined to submit to a blood test.
Adams took the stand on his own behalf. According to Adams, he was driving to Radcliffe from Louisville when he approached the safety checkpoint. Adams stated that he stopped his vehicle, and an officer approached. The officer requested Adams's license and registration. Adams claimed that, while still wearing his seatbelt, he leaned back in his seat to reach into his front pocket to get his license. When he leaned back, however, Adams claimed that his foot slipped off the brake and landed under the gas pedal, causing the vehicle to take off. Adams testified that he grabbed the steering wheel in an attempt to control the vehicle. He tried to pull his foot out from under the gas pedal, but that gave the vehicle more gas. Adams explained to the jury that because he did not want to hurt anyone, he turned on to a less busy street, hoping that he would be able to stop the vehicle. However, he was not able to do so. Adams testified that when it became clear that he was not going to be able to stop the vehicle, he decided to intentionally crash the vehicle into a tree. After the initial impact, Adams exited his vehicle and found himself in the middle of the street. He then put his hands up in the air and ran around to the other side of the car so he could get out of the street. While doing so, Adams slipped and fell, at which point he blacked out. He felt two officers pick him up and "slam" him face first into the hood of a car. Pertinent to this appeal, on redirect the Commonwealth questioned Officer Smith fairly extensively about the mechanical intricacies involved in vehicle acceleration and, specifically, about the acceleration system employed by the Chevy Impala that Adams was driving. The Commonwealth first asked Officer Smith if he was familiar with cars. Officer Smith responded in the affirmative. The Commonwealth then queried whether Officer Smith was "mechanically inclined." Again, Officer Smith responded in the affirmative stating that he had worked on cars for the past fifteen years. The Commonwealth then asked Officer Smith if he was familiar with the type of car Adams was driving on the night in question, a 2004 Chevy Impala. Officer Smith stated that he was familiar with the mechanics of a 2004 Chevy Impala because he owned a 2005 Chevy Impala, which was the same body style as the 2004 model. Officer Smith then began explaining to the jury about the mechanics of vehicle acceleration, including the two primary means by which vehicles can be designed to accelerate: electronically or mechanically. At this point, Adams's counsel objected that Officer Smith was not an expert witness and was not qualified to give testimony on automobile mechanics. The trial court summarily overruled the objection because Officer Smith testified that he owned a Chevy Impala and had "worked on it"
*588 before. The trial court indicated that Adams was free to cross-examine Officer Smith on his qualifications. Thereafter, Officer Smith continued his testimony. He went on to explain the type of acceleration system utilized in Chevy Impalas, and why it was not possible, given the nature of that system, to accelerate a Chevy Impala by pushing up on the gas pedal from underneath. He also testified that one of the basic safety features of all vehicles is that the gas and the brake pedal are not the same height; the brake pedal sits higher than the gas pedal. On cross-examination, Officer Smith admitted that he had never attended any special school for a mechanic, had never worked as a mechanic, and did not have a mechanics license or certification.
Subsequently, the jury found Adams guilty of first-degree fleeing or evading police; operating a motor vehicle while under the influence of alcohol or other substance that impairs driving ability; and first-degree wanton endangerment. Adams received a sentence of six years' imprisonment and a $500.00 fine.
It is from that judgment and sentence that Adams now appeals to this Court.
II. ANALYSIS
Regarding the trial court's decision that Officer Smith's testimony concerning the mechanics of the Chevy Impala was admissible, we note that "[a]ssuredly, the trial court is granted broad discretion in its determination on the admissibility of evidence in rebuttal under RCr[2] 9.42." Chestnut v. Commonwealth , 250 S.W.3d 288, 298 (Ky. 2008). "The standard of review for a trial court's evidentiary ruling is abuse of discretion." Rucker v. Commonwealth , 521 S.W.3d 562, 569 (Ky. 2017). "Where there is no clear showing of arbitrariness or an abuse of discretion, the ruling of the trial court will not be disturbed." Pilon v. Commonwealth , 544 S.W.2d 228, 231 (Ky. 1976).
Officer Smith's testimony was within the scope of permissible rebuttal testimony insomuch as it served to refute Adams's testimony that his sudden departure from the checkpoint was an unintentional act caused by his foot becoming lodged under the accelerator of the car. The gist of Officer Smith's rebuttal testimony on this issue was that due to the mechanics of the Chevy Impala's accelerator system, it was not possible for it to accelerate in the way Adams described. The Commonwealth did not attempt to have Officer Smith qualified as an expert witness under KRE[3] 702. Therefore, we must determine whether his testimony was properly admitted as a lay opinion under KRE 701. This Rule provides:
If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are:
(a) Rationally based on the perception of the witness;
(b) Helpful to a clear understanding of the witness' testimony or the determination of a fact in issue; and
(c) Not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.
KRE 701 (emphasis added).
Our Supreme Court recently explained that opinion testimony under KRE 701"serves a rather mundane and undramatic purpose which we might be more likely to notice if the rule did not exist."
*589 Davidson v. Commonwealth , 548 S.W.3d 255, 260-61 (Ky. 2018). The Court further elaborated as follows:
Much of our spoken communication in the English language is expressed in the form of opinions instinctively and automatically drawn almost subconsciously from perceptions and observations in the course of everyday life. It is often difficult for an individual to articulate the specific perceptions that generate the opinion.
For example, a person may say, "When I called your house, a small child answered the phone;" or "Friday was a very hot day." To be precise, those are opinions of non-experts. The speaker's opinion is that a small child answered the phone because the voice resonated softly, the tone was timid, and the vocabulary was limited. The speaker knows Friday was hot because she felt the sweat on her brow, she was exhausted from exerting herself, and she saw the sun melting the tar up on the roof. In everyday speech, we do not encumber our conversations with the minute perceptions that lead to such opinions; instead, we simply correlate the perceptions into the opinion and state it as a fact-Friday was hot; a small child answered the phone. In each instance, the relevant information is difficult or cumbersome to express without resorting to an opinion.
Professor Lawson describes lay opinion testimony admissible under KRE 701 as "little more than a shorthand rendition of facts that the witness personally perceived." Kentucky Evidence Law Handbook § 6.05[2][a], 416 (quoting 4 McLaughlin, Weinstein's Federal Evidence § 701.03[1] (2d ed. 2013) ).
KRE 701 is a modern corollary of the common law "collective facts rule," which "permits a lay witness to resort to a conclusion or an opinion to describe an observed phenomenon where there exists no other feasible alternative by which to communicate that observation to the trier of fact." Clifford v. Commonwealth , 7 S.W.3d 371, 374 (Ky. 1999).
...
Lawson cites classic examples of KRE 701 lay opinion testimony: "a lay witness may be allowed to testify to the speed of a vehicle in motion on the basic observation of the vehicle" and "a lay witness may be allowed to testify to the insanity of an accused on the basis of personal observation." Kentucky Evidence Law Handbook § 6.05[2][a], 415. Without KRE 701, trial testimony could become mired in debate about the countless minute perceptions by which ordinary people form the routine opinions that guide their lives. Because of KRE 701, those aspects of trial testimony can proceed like everyday conversation.
Id. at 259-60.
Adams argues, and we agree, that the testimony Officer Smith was allowed to present far exceeded the common knowledge of ordinary people. In fact, at one point, the Commonwealth actually told Officer Smith to "hold on one second" because "we're not all mechanically inclined." The Commonwealth then asked Officer Smith a series of more direct questions about vehicle acceleration. These questions led to Officer Smith's ultimate opinion/inference that the particular intricacies of the 2004 Chevy Impala would not enable acceleration from under the gas pedal as Adams had described happening to him on the night in question. The type of testimony Officer Smith gave was specialized and technical in nature and, therefore, exceeded the permissible scope of lay opinion *590 testimony permitted by KRE 701.[4]
Equally troubling, Officer Smith testified that he owned a 2005 Chevy Impala, not a 2004 Chevy Impala. He did not provide any basis for his statement that the two vehicles were mechanically the same. While he indicated that he had worked on cars for the last fifteen years, he never testified that he had worked on the acceleration system of a 2004 Chevy Impala. Therefore, the Commonwealth did not demonstrate that Officer Smith actually had personal knowledge of the mechanics of the acceleration system that was in Adams's vehicle. See KRE 602. Likewise, Officer Smith did not testify that he examined the acceleration system of Adams's vehicle. His testimony was not based on his personal perceptions of Adams's particular vehicle or one shown to be identical thereto. See KRE 701(a).
The type of information the Commonwealth adduced through Officer Smith, a lay witness, was technical in nature. Officer Smith provided a primer to the jury on the two different types of acceleration systems used in modern vehicles, testified (with no foundation) that the accelerator system in Adams's 2004 Chevy Impala was identical to the acceleration system in his 2005 Chevy Impala, and then offered his opinion that it would not be possible to accelerate a 2004 Chevy Impala from under the gas pedal given its style of acceleration system. This testimony well-exceeded the scope of permissible lay opinion testimony under KRE 701 ; the trial court abused its discretion in allowing it over Adams's objection.
Having so concluded, our next task is to determine the magnitude of allowing this testimony to come before the jury. "The test for harmless error is whether there is any reasonable possibility that, absent the error, the verdict would have been different." Taylor v. Commonwealth , 995 S.W.2d 355, 361 (Ky. 1999). Whether the error is harmless beyond a reasonable possibility depends on a number of factors, including: the importance of the witness' testimony in the prosecution's case; whether the testimony was cumulative; the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; the extent of cross-examination otherwise permitted; and the overall strength of the prosecution's case. See Delaware v. Van Arsdall , 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986).
Adams's sole defense to the charges against him was his contention that he did not intentionally flee police on the night in question. He explained to the jury that his vehicle spontaneously accelerated when his foot became stuck under the gas pedal. Officer Smith was the only witness the Commonwealth called to rebut Adams's claim. His testimony was highly technical in nature; it culminated in an "expert" opinion that the mechanics of the vehicle acceleration system in Adams's 2004 Chevy Impala were incompatible with Adams's version of events. Moreover, he did so while dressed in full police uniform.
While the jury may have still reached the same verdict, we cannot say with any degree of certainty that the result of this *591 case would have been the same had Officer Smith not provided this testimony. Accordingly, we must vacate and remand this matter to the trial court for further proceedings.
We will now briefly address Adam's argument that the jury instructions violated the prohibition against double jeopardy as this issue will likely resurface during any retrial.
The Fifth Amendment to the United States Constitution guarantees that no person shall "for the same offense, be twice put in jeopardy of life or limb[.]" Section 13 of the Kentucky Constitution is virtually identical and affords the same prohibition against convicting or charging a person twice for the same offense. In order to determine whether a double jeopardy violation has occurred, the Blockburger same-elements test is employed: "whether the act or transaction complained of constitutes a violation of two distinct statutes and, if it does, if each statute requires proof of a fact the other does not. Put differently, is one offense included within another?" Commonwealth v. Burge , 947 S.W.2d 805, 811 (Ky. 1996) (internal citation omitted) (adopting the test set forth in Blockburger v. U.S. , 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) ).
As presented in the instructions, only two elements were required for the jury to find Adams guilty of DUI: (1) he was operating a motor vehicle in Hardin County on or about September 13, 2015; and (2) while doing so he was under the influence of alcohol or any substance which may impair one's driving ability. The third element the jury had to find Adams guilty of fleeting or evading police required a determination that Adams was operating a motor vehicle under the influence of alcohol or any other substance or a combination of substances which may impair one's driving ability. It follows, therefore, that "once the Commonwealth proved the specific conduct required to convict Appellant of first-degree fleeing or evading police, it necessarily proved the general conduct necessary to convict him of [DUI]." Brown v. Commonwealth , 297 S.W.3d 557, 562 (Ky. 2009) ; see also Pinkston v. Commonwealth, 2001-CA-002552-MR, 2004 WL 595647, at *1 (Ky. App. Mar. 26, 2004) (holding that based on double jeopardy defendants' convictions for both first-degree evading or fleeing a police officer and the second offense DUI conviction could not stand); McKee v. Commonwealth , 2011-SC-000243-MR, 2012 WL 1478779, at *5 (Ky. Apr. 26, 2012).[5] As such, double jeopardy was violated in this case. Accordingly, we vacate Adams's DUI conviction because it is the lesser of the two offenses.
III. CONCLUSION
For the foregoing reasons, we vacate the judgment entered by the Hardin Circuit Court and remand this matter for further proceedings.
ALL CONCUR.

Kentucky Rules of Criminal Procedure.

Kentucky Rules of Evidence.

Moreover,
[t]he Evidence Rules Review Commission Notes regarding KRE 701 indicate that subsection (c) is specifically intended to combat the possibility of counsel avoiding the reliability standards set out in Daubert v. Merrell Dow Pharmaceuticals , 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)"by the simple process of offering 'scientific, technical, or other specialized knowledge' evidence through a witness that an attorney sought to identify as a 'lay witness.' "
McDaniel v. Commonwealth , 415 S.W.3d 643, 654 (Ky. 2013).

We cite these unpublished cases only for persuasive authority pursuant to CR 76.28(4)(c).