RENDERED: NOVEMBER 20, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1129-MR

TIRRELL BARBOUR　　　　　　　　　　　　　　　　APPELLANT

　　　　　　　APPEAL FROM HARDIN CIRCUIT COURT
v.　　　　　　HONORABLE KEN M. HOWARD, JUDGE
　　　　　　　ACTION NO. 18-CR-01167

COMMONWEALTH OF KENTUCKY　　　　　　　　　　APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, GOODWINE, AND LAMBERT, JUDGES.

LAMBERT, JUDGE: Tirrell Barbour has appealed as a matter of right from the

judgment of the Hardin Circuit Court convicting him of first-degree fleeing or

evading police, operating a motor vehicle under the influence, speeding, and being

a first-degree persistent felony offender. The court sentenced him to 15 years'

imprisonment. Finding no error, we affirm.

The Hardin County grand jury returned a multiple count indictment against Barbour related to an attempted traffic stop on September 28, 2018, by Kentucky State Trooper Jeremy Duvall while he was patrolling on southbound Interstate 65. Barbour refused to pull over and continued to drive at an excessive speed as Trooper Duvall pursued him on the interstate, which was an active construction zone. As Barbour attempted to exit the interstate on an exit ramp, he flipped his automobile, hit a light pole and construction signs, crawled out of his car, ran across the ramp, jumped over a fence, and ran away from the officers. The officers apprehended him in a muddy field. As a result, the grand jury charged him with first-degree fleeing or evading police (while operating a motor vehicle); first-degree wanton endangerment, police officer; resisting arrest; operating a motor vehicle under the influence of intoxicants, second offense, aggravated (DUI); speeding, 26 mph over; first-degree wanton endangerment; first- and third-degree criminal mischief; failure to signal; second-degree fleeing or evading police (as a pedestrian); and being a first-degree persistent felony offender (PFO I). Barbour entered a plea of not guilty at his arraignment, and a jury trial was scheduled. Prior to trial, and on the Commonwealth's motion, the court dismissed counts 2, 3, 6, 9, and 10 of the indictment related to wanton endangerment, resisting arrest, first-degree criminal mischief, and the second-degree fleeing or evading police charge (as a pedestrian).

A three-day jury trial commenced on May 29, 2019. Following the close of evidence, the trial court instructed the jury on five counts: first- and second-degree fleeing or evading police, DUI, speeding, third-degree criminal mischief, and failure to signal. The jury ultimately returned guilty verdicts on the charges of first-degree fleeing or evading police, DUI, and speeding. The jury found Barbour not guilty of criminal mischief and failure to signal. After the penalty phase, the jury recommended a five-year sentence for the fleeing or evading police conviction, enhanced to 15 years for his status offense of being a PFO I.

Following the trial, Barbour filed a motion pursuant to Kentucky Rules of Criminal Procedure (RCr) 10.02 and 10.24 requesting the trial court to enter a verdict of not guilty or, in the alternative, to grant him a new trial. He argued that there was insufficient evidence to support his convictions and raised issues related to the introduction of video evidence of the vehicle and foot pursuit, hyperbole used by the Commonwealth in describing the applicable portion of I-65 as one of the busiest in the country, and the introduction of photographs of the scene where Barbour's vehicle came to a stop.

The trial court ultimately entered a judgment and sentence on July 19, 2019, finding Barbour guilty of the offenses as found by the jury and sentencing him to an enhanced 15-year sentence for the first-degree fleeing or evading police

conviction and a $100.00 fine for the speeding conviction. By a separate order, the court entered a sentence for the DUI conviction, which was a fine and four days of imprisonment with a four-day credit. Barbour was ordered to complete a treatment program and attend a DUI victim impact panel. This appeal now follows.

On appeal, Barbour raises three arguments. These address his representation by appointed counsel, testimony from Trooper Duvall regarding blood testing, and jury instructions. We shall consider each issue in turn.

For his first issue, Barbour seeks palpable error review pursuant to RCr 10.26, to the extent it was not preserved, related to whether the trial court should have held a hearing as to whether his public defender should remain his trial counsel. The Supreme Court of Kentucky defined a review for palpable error in *Schoenbachler v. Commonwealth*, 95 S.W.3d 830, 836 (Ky. 2003), as follows:

> A palpable error is one of that [sic] "affects the substantial rights of a party" and will result in "manifest injustice" if not considered by the court, and "[w]hat it really boils down to is that if upon a consideration of the whole case this court does not believe there is a substantial possibility that the result would have been any different, the irregularity will be held nonprejudicial."

(Footnotes omitted); *see also Miller v. Commonwealth*, 283 S.W.3d 690, 695 (Ky. 2009) ("[A]n unpreserved error that is both palpable and prejudicial, still does not justify relief unless the reviewing court further determines that it has resulted in a manifest injustice; in other words, unless the error so seriously affected the

-4-

fairness, integrity, or public reputation of the proceeding as to be 'shocking or jurisprudentially intolerable.'").

This issue arose as a result of an exchange between the trial court and Barbour at a pretrial conference on May 14, 2019, shortly before the trial in this action. Barbour's appointed counsel informed the court that the Commonwealth had made a guilty plea offer, which counsel had advised him to accept. However, Barbour chose not to follow this advice. The following discussion then occurred:

> Court: Mr. Barbour, you understand that it's your attorney's responsibility to, obviously, convey any offer that's made, to give you his best advice, but then it's ultimately your final decision, and you understand that.
>
> Barbour: Yes, sir, I understand, but I honestly don't feel like my attorney's been helping me, I feel like he's not really trying.
>
> Court: I don't want you to talk about what you all have discussed, that's between you and him.
>
> Barbour: Okay.
>
> Court: I just want to make sure you understand that any final plea decision is yours.
>
> Barbour: Yes, sir.
>
> Court: And so, we will go to trial next Wednesday.
>
> Counsel: Yes, sir.
>
> Court: Thank you.

Barbour then asked his counsel about medical records he had been trying to give to the trial court for six months related to a recommended medical treatment he had been seeking but that the jail had refused to approve. Barbour specifically sought a reduction of his bond so that he could go to the hospital and have the procedure performed. The court did not reduce Barbour's bond and indicated that it was not a medical professional and could not tell other medical professionals what to do. The discussion regarding Barbour's experience with the jail staff and his pending lawsuit against the jail continued, which prompted the court to remind Barbour that it was presiding over his criminal action. Barbour then began to leave the courtroom with the bailiffs. As he was walking, Barbour stated:

> Your honor, can you put it on the record, I don't want him [his appointed counsel] on my case. I don't want him on my case. He's going to get me killed. He ain't trying to help me. He's buddies with the prosecutor. Buddy-buddy.

The issue was not raised again, and the trial took place with the same appointed counsel representing Barbour.

Based upon this conversation at the pretrial conference, Barbour now argues that he was entitled to a hearing to determine whether he had shown sufficient cause for a substitute counsel to be appointed. We disagree that Barbour has shown palpable error that would support reversal on this issue.

In *Deno v. Commonwealth*, 177 S.W.3d 753, 759 (Ky. 2005), the Supreme Court of Kentucky discussed an indigent defendant's right to substitute counsel:

> An indigent defendant is not entitled to the appointment of a particular attorney, and a defendant who has been appointed counsel is not entitled to have that counsel substituted unless adequate reasons are given. When a defendant requests substitution of counsel during trial, "the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict." Good cause has been described as: (1) a "complete breakdown of communications between counsel and defendant;" (2) a "conflict of interest;" and (3) that the "legitimate interests of the defendant are being prejudiced." Whether good cause exists for substitute counsel to be appointed is within the sound discretion of the trial court.

(Footnotes omitted.) "[M]ere dissatisfaction with appointed counsel's performance is insufficient to support a motion to support his removal." *Stinnett v. Commonwealth*, 364 S.W.3d 70, 81 (Ky. 2011).

While Barbour contends that *Deno* contains an implicit hearing requirement on a motion to substitute appointed counsel by citing to an unpublished opinion, the Commonwealth counters that a formal hearing is not required in the absence of good cause for a defendant's dissatisfaction.

> The trial court has an affirmative duty to inquire into the source and nature of a criminal defendant's expressed dissatisfaction with counsel. *Benitez v. United States*, 521 F.3d 625, 634 (6th Cir. 2008). However, a

searching inquiry is not required unless the defendant raises some "substantial basis for dissatisfaction." *Monroe v. United States*, 389 A.2d 811, 820 (D.C. App. 1978). The nature and scope of the inquiry is not rigid. Instead, the necessary scope depends on the circumstances of each case. *Id*. at 821. Whatever the inquiry requires, though, it must be sufficient to elicit whether counsel has both the ability and the preparedness to effectively assist the defendant. *Id*.

*Padgett v. Commonwealth*, 312 S.W.3d 336, 343 (Ky. 2010). Here, we agree with the Commonwealth that Barbour's statements at the end of the pretrial proceeding did not provide a substantial basis for replacing his appointed counsel shortly before trial was scheduled to begin or for even holding a hearing to explore this request. We find no error, palpable or otherwise, to justify reversal on this issue.

Next, Barbour contends that the admission of testimony that he had declined an independent blood test constituted palpable error. Trooper Duvall provided this information during his examination after he stated that Barbour had consented to a blood draw at the hospital and Duvall had read the implied consent form to Barbour. Barbour argues that this testimony resulted in an unfair inference that he was guilty of intoxication and constituted a violation of his Fifth Amendment right against self-incrimination, citing *Griffin v. California*, 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965), as well as his Fourth Amendment rights against unreasonable searches. We disagree that any manifest injustice occurred to support reversal.

Kentucky Revised Statutes (KRS) 189A.103 requires an officer to inform a person who has undergone a test at the officer's request that he or she may request an independent test:

> The following provisions shall apply to any person who operates or is in physical control of a motor vehicle or a vehicle that is not a motor vehicle in this Commonwealth:
>
> (1) He or she has given his or her consent to one (1) or more tests of his or her blood, breath, and urine, or combination thereof, for the purpose of determining alcohol concentration or presence of a substance which may impair one's driving ability, if an officer has reasonable grounds to believe that a violation of KRS 189A.010(1) or 189.520(1) has occurred;
>
> . . .
>
> (7) After the person has submitted to all alcohol concentration tests and substance tests requested by the officer, the person tested shall be permitted to have a person listed in subsection (6) of this section of his or her own choosing administer a test or tests in addition to any tests administered at the direction of the peace officer. Tests conducted under this section shall be conducted within a reasonable length of time. Provided, however, the nonavailability of the person chosen to administer a test or tests in addition to those administered at the direction of the peace officer within a reasonable time shall not be grounds for rendering inadmissible as evidence the results of the test or tests administered at the direction of the peace officer.

KRS 189A.105 addresses, in part, the option to request an independent test, and subsection (2)(a)3. provides:[1]

> At the time a breath, blood, or urine test is requested, the person shall be informed . . . [t]hat if the person first submits to the requested alcohol and substance tests, the person has the right to have a test or tests of his blood performed by a person of his choosing described in KRS 189A.103 within a reasonable time of his arrest at the expense of the person arrested.

The same statute requires the officer to inform the arrested person a second time of his or her right to have an independent blood test:[2]

> (4) Immediately following the administration of the final test requested by the officer, the person shall again be informed of his right to have a test or tests of his blood performed by a person of his choosing described in KRS 189A.103 within a reasonable time of his arrest at the expense of the person arrested. He shall then be asked "Do you want such a test?" The officer shall make reasonable efforts to provide transportation to the tests.

We agree with the Commonwealth that Barbour's constitutional rights were not impacted by the testimony that he had declined an independent blood test. "Exclusion of evidence for violating the provisions of the informed consent statute is not required. It has been held in Kentucky and elsewhere that in the absence of an explicit statutory directive, evidence should not be excluded for the violation of

---

[1] We are utilizing the version of this subsection of KRS 189A.105 in effect between June 24, 2015, and June 30, 2020.

[2] *See* footnote 1.

-10-

provisions of a statute where no constitutional right is involved." *Beach v.*

*Commonwealth*, 927 S.W.2d 826, 828 (Ky. 1996). There was no such statutory

directive here that evidence should be excluded for the violation of this statute.

Furthermore, "the Fifth Amendment is not implicated here. The Fifth Amendment

protection applies to evidence of a testimonial nature. It does not apply to physical

evidence such as bodily fluids, breath, and hair." *Deno*, 177 S.W.3d at 760

(footnote omitted). Finally, the Fourth Amendment is not implicated because

Barbour was not coerced into taking an independent blood test or into declining the

offer of one. We find no error on this issue, palpable or otherwise.

For his final argument, Barbour contends that the jury instructions for

first-degree fleeing or evading police and DUI constituted a violation of double

jeopardy under both statutory and constitutional grounds. Again, this issue was not

preserved for review, although we agree with the Commonwealth that Barbour did

not waive his constitutional double jeopardy claim:

> [A]lthough Appellant failed to raise this issue at trial,
> "the constitutional protection against double jeopardy is
> not waived by failing to object at the trial level." *Walden
> v. Commonwealth*, 805 S.W.2d 102, 105 (Ky. 1991)
> (*overruled on other grounds by Commonwealth v. Burge*,
> 947 S.W.2d 805 (Ky. 1996)). Accordingly, Appellant's
> constitutional double jeopardy argument is properly
> raised for our review. It is important to note that this rule
> is premised upon the *constitutional* stature of the right,
> and as further discussed below, we ultimately resolve this
> issue upon *statutory* grounds. Nevertheless, review of
> the unpreserved claim of a violation of statutory double

jeopardy is proper upon application of the palpable error rule, *see* RCr 10.26. *Cardine v. Commonwealth*, 283 S.W.3d 641 (Ky. 2009) ("Double jeopardy violation resulting when defendant was retried following trial court's *sua sponte* declaration of mistrial on less than manifest necessity constituted palpable error.").

*Kiper v. Commonwealth*, 399 S.W.3d 736, 740-41 (Ky. 2012) (footnote omitted).

In *Adams v. Commonwealth*, 564 S.W.3d 584, 591 (Ky. App. 2018), this Court explained the protections against double jeopardy:

> The Fifth Amendment to the United States Constitution guarantees that no person shall "for the same offense, be twice put in jeopardy of life or limb[.]" Section 13 of the Kentucky Constitution is virtually identical and affords the same prohibition against convicting or charging a person twice for the same offense. In order to determine whether a double jeopardy violation has occurred, the *Blockburger* same-elements test is employed: "whether the act or transaction complained of constitutes a violation of two distinct statutes and, if it does, if each statute requires proof of a fact the other does not. Put differently, is one offense included within another?" *Commonwealth v. Burge*, 947 S.W.2d 805, 811 (Ky. 1996) (internal citation omitted) (adopting the test set forth in *Blockburger v. U.S.*, 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306 (1932)).

Both Barbour and the Commonwealth have put forth several arguments in support of their respective positions. However, we hold that Barbour's arguments must fail because the jury instructions at issue permitted the jury to decide that he was guilty under instructions that required proof of a fact that the other did not. We shall now examine the instructions at issue in this case as well as their statutory bases.

-12-

KRS 520.095(1) provides that a person is guilty of first-degree fleeing or evading police:

(a) When, while operating a motor vehicle with intent to elude or flee, the person knowingly or wantonly disobeys a direction to stop his or her motor vehicle, given by a person recognized to be a police officer, and at least one (1) of the following conditions exists:

1. The person is fleeing immediately after committing an act of domestic violence as defined in KRS 403.720;

2. The person is driving under the influence of alcohol or any other substance or combination of substances in violation of KRS 189A.010;

3. The person is driving while his or her driver's license is suspended for violating KRS 189A.010; or

4. By fleeing or eluding, the person is the cause, or creates substantial risk, of serious physical injury or death to any person or property[.]

Instruction No. 4 addressed this charge under the indictment:

You will find the Defendant guilty of First-Degree Fleeing/Evading Police under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in Hardin County on or about September 28, 2018 and before the finding of the Indictment herein, he operated a motor vehicle with the intent to flee or elude;

-13-

**AND**

B. That he knowingly or wantonly disobeyed a direction to stop his motor vehicle, which direction was given by a person whom he recognized to be a police officer;

**AND**

C. That he was operating the motor vehicle under the influence of intoxicants which may impair one's driving ability;

**OR**

That his act of fleeing or eluding caused or created a substantial risk of serious physical injury or death to any person or serious injury to property.

As to the DUI charge, KRS 189A.010(1)(c) provides that "[a] person shall not operate or be in physical control of a motor vehicle anywhere in this state . . . [w]hile under the influence of any other substance or combination of substances which impairs one's driving ability[.]" Instruction No. 6 addressed this charge:

You will find the Defendant Guilty of Operating a Motor Vehicle While Under the Influence of Alcohol or Other Substance Which Impairs Driving Ability if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in Hardin County on or about September 28, 2018 and within 12 months before the finding of the Indictment herein he operated a motor vehicle;

**AND**

B.  That while doing so, he was under the influence of a substance which may impair one's driving ability[.]

The Commonwealth argues that the jury could have found Barbour guilty of the fleeing or evading police charge by finding that he caused or created a substantial risk of serious physical injury or death or serious injury to property, and the instruction did not require a finding that he was operating his motor vehicle under the influence in order to find guilt.  Therefore, there can be no double jeopardy violation.  It cites to *Davis v. Commonwealth*, 967 S.W.2d 574, 582 (Ky. 1998), in support of this argument, in which the Supreme Court addressed the unanimous verdict requirement in criminal prosecutions:

Nothing less than a unanimous verdict is permitted in a criminal case.  KRS 29A.280(3); *Wells v. Commonwealth*, Ky., 561 S.W.2d 85 (1978).  Unanimity becomes an issue when the jury is instructed that it can find the defendant guilty under either of two theories, since some jurors might find guilt under one theory, while others might find guilt under another.  If the evidence would support conviction under both theories, the requirement of unanimity is satisfied.

On the other hand, Barbour argues that by using this reasoning, the Commonwealth was ignoring its theory of the case that he was driving while he was impaired, which he asserts the jury validated by convicting him of the DUI charge.

-15-

We must agree with the Commonwealth that the instructions at issue did not require the jury to find that Barbour had been operating his motor vehicle under the influence in order to convict him of fleeing or evading police. The evidence certainly established proof of both alternatives included in Instruction No. 4. Therefore, we hold that Barbour's right to be protected against double jeopardy was not violated in this instance and that vacation of the DUI conviction is not warranted.

For the foregoing reasons, the judgment of the Hardin Circuit Court is affirmed.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Steven J. Buck
Assistant Public Advocate
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Mark D. Barry
Assistant Attorney General
Frankfort, Kentucky