RENDERED:  JANUARY 30, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1082-MR

DENNIS CARLTON AND NORMA
CARLTON                                                                    APPELLANTS


                      APPEAL FROM PULASKI CIRCUIT COURT
v.                    HONORABLE TERESA WHITAKER, JUDGE
                      ACTION NO. 19-CI-00493


JAMES M. POYNTER AND KELLY
JO POYNTER                                                                    APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, LAMBERT, AND MOYNAHAN, JUDGES.

CALDWELL, JUDGE:  Dennis and Norma Carlton ("the Carltons") appeal from a judgment holding them liable for water damage to the property of their neighbors, James M. and Kelly Jo Poynter ("the Poynters").  We affirm.

## FACTS

The Poynters filed suit against the Carltons, asserting claims for trespass and nuisance.  They sought compensatory damages for diminution of their

property's value and for loss of use and enjoyment of their property. They also sought other relief including punitive damages and an injunction for the Carltons to cease diverting drainage water from their own property onto the Poynter property.

The case proceeded to a bench trial on liability and a later hearing on damages. Although they were previously represented by counsel, the Carltons were not represented by counsel during the bench trial on liability and the damages hearing. The trial court determined the Carltons were liable for causing water damage to the Poynter property and its judgment concluded: "The evidence in this case establishes deliberate and malicious trespass and creation of a nuisance, resulting in substantial damages."

The court found the Carlton property had long been a wetland of drainage from an adjacent property at a higher elevation down to the Loveless pond. It further found the natural drainage in this area went through a small portion of the Poynter property. The court noted evidence that an area behind the Poynters' garage would stay wet for days after wet weather. Nonetheless, the court found the natural drainage in this area did not materially affect the Poynter property until Dennis Carlton ("Dennis") made certain changes to his property; changes made after the Poynters complained to a governmental agency about the Carltons' burning trash.

The trial court found Dennis twice dug ditches on his property to divert water onto the Poynter property. It also found James Poynter tried to soak up extra water by placing more dirt on the Poynter property, but the effect did not last long. Additionally, the court found Dennis destroyed the culvert system which he had previously installed to alleviate drainage on the Carlton property. It found that a ditch dug by Dennis diverted water to the Poynters' side yard, which previously had no water issues and was easily mowed. The court further found water flowing from the Carlton property and the adjacent property at the higher elevation continued to pool on the Carlton and Poynter property.

Next, the trial court found Dennis built a pond on his property close to the property line with the Poynter property. It found this pond caused additional damage to the Poynter property, including severe damage to the Poynters' house and side yard. The court found the pond spilled or seeped water above and below the ground which overflowed onto the Poynter property. It also found Dennis' building the pond raised the level of the Carlton property, resulting in significantly more water flowing onto the Poynter property.

The trial court enjoined the Carltons to take remedial action, as specified by Dale Combs (a witness for the Poynters) to solve the water problem. It held the Carltons responsible for constructing and maintaining ditches to end what it referred to as trespass and nuisance problems.

In addition to this injunctive relief, the trial court ordered the Carltons to pay the Poynters $70,806.76 in damages. The court judgment stated: "the Carltons are liable to the Poynters for the actual damages they have caused to their real estate" and "[t]he demonstrated costs to return the house to its prior state of repair constitute a reasonable inference as to the diminution in the fair market value of the subject property." (Page 5 of judgment) (citing *Ellison v. R & B Contracting, Inc.*, 32 S.W.3d 66, 75 (Ky. 2000)).

The court also held the Poynters were "entitled to compensation for all consequences of the wrong" since they "pled and proved the creation of a nuisance . . . ." (Page 5 of judgment) (citing *Radcliff Homes, Inc. v. Jackson*, 766 S.W.2d 63 (Ky. App. 1989)). It noted repair costs were recoverable for nuisance. Lastly, the judgment stated: "In addition, or in the alternative, the cost of repair of damages is also justified as punitive damages for the malicious and deliberate conduct of Dennis Carlton as sought in the Verified Complaint and established by the evidence."

The Carltons raise two issues on appeal. They contend the trial court's finding that they acted deliberately and maliciously in altering their property to redirect water flow onto the Poynter property is not supported by substantial evidence. Therefore, they assert the trial court erroneously determined punitive damages were warranted. They also argue the trial court committed

-4-

palpable error in admitting a witness's opinion testimony.  We address the evidentiary issue first, setting forth further facts as needed.

## ANALYSIS

### No Palpable Error in Trial Court's Admission of Dale Combs' Testimony

The Carltons seemingly admit that the alleged error in the trial court's admitting Dale Combs' opinion testimony was not preserved for review. Nonetheless, the Carltons contend the trial court committed palpable error in admitting opinion testimony from Combs.[1]

The Carltons point to Combs' testimony that their pond was too close to the property line and would leach out onto the ground.  They also point to his testimony that the pond raised the water table, allowed animals to dig underneath leading to seepage, and constantly fed water into the Poynters' yard.  The Carltons also spotlight Combs' testimony that the Poynters' water problems could be solved by getting rid of the pond or by digging ditches under certain specified conditions. They suggest this was inadmissible opinion testimony.

---

[1] The body of the appellant brief asserts the trial court erred in admitting opinion testimony from Dale Combs.  However, the heading for this argument in the appellant brief states:  "**THE TRIAL COURT ERRANTLY OMITTED OPINION TESTIMONY IN VIOLATION OF KRE 701**."  (Appellant red brief, page 11) (bold font in original).  We address the assertion set forth in the body of the brief rather than the inconsistent assertion in the quoted heading.

The Carltons argue Combs' opinion could not be properly admitted as lay witness opinion testimony under KRE[2] 701. In their brief they argue Combs lacked personal knowledge of "the subsurface water flow caused by the pond" and of "water leaching from Carlton's pond underground." They assert Combs' perspective was limited because he simply observed conditions above ground while he delivered dirt to the Poynters. For example, they point to Combs' testimony about his observing the pond's surface while he stood on the Poynter property looking at the Carlton property. The Carltons contend Combs could not directly observe the water table on their property, the pond's effects on the Carlton and Poynter properties, the underground flow of water between the properties, whether the pond was leaching into the ground, or whether animals living in the pond were causing water to leach into the Poynter property.

Based on these assertions that Combs lacked personal knowledge of these matters, they argue the trial court abused its discretion in admitting and considering Combs' testimony. *See Davidson v. Commonwealth*, 548 S.W.3d 255, 258 (Ky. 2018) (construing KRE 701 to require that lay opinion testimony must "be based upon the witness's own perception"). In addition to arguing Combs lacked personal knowledge of these matters, the Carltons contend Combs testified to matters of scientific, technical, or specialized knowledge beyond the realm of

---

[2] Kentucky Rules of Evidence.

proper lay opinion testimony set forth in KRE 701. Instead, in their view, testimony about the matters addressed by Combs could only be properly admitted as expert testimony under KRE 702 after the witness is properly qualified as an expert. *See Adams v. Commonwealth*, 564 S.W.3d 584, 589–90 (Ky. App. 2018) ("mechanically inclined" police officer's testimony that defendant's vehicle could not have spontaneously accelerated as the defendant claimed was "specialized and technical in nature and, therefore, exceeded the permissible scope of lay opinion testimony permitted by KRE 701"; thus, trial court abused its discretion in admitting this testimony over the defendant's objection). In the Carltons' view, Combs was not an expert.

The Carltons assert the trial court abused its discretion in admitting Combs' opinion testimony without qualifying him as an expert. In response, the Poynters assert that they and the trial court reasonably perceived the Carltons were not challenging Combs' qualifications or the foundations for his opinions due to the lack of timely objection. In their brief the Poynters also assert: "Had there been any timely objection to Combs' qualifications to render opinions, Appellees [the Poynters] would have had the opportunity to present additional testimony on his qualifications and the foundation for his opinions."

The Poynters also urge this Court to decline to reach this unpreserved evidentiary issue because it was not raised in the Carltons' original prehearing

statement. They further state their disagreement with the motion panel's decision to allow the Carltons to file an amended prehearing statement and to address this issue in their brief.

We decline to second-guess the motion panel's decision to allow briefing of this issue, especially since the original prehearing statement (filed *pro se*) generally indicated the Carltons were raising issues about Combs' testimony. We opt to briefly address this unpreserved evidentiary issue.

Given the lack of preservation, we need not address whether the trial court abused its discretion in admitting Combs' opinion testimony or whether this opinion testimony should have been excluded if a timely objection had been lodged. Instead, we review this issue solely to determine if there was palpable error affecting the Carltons' substantial rights and resulting in manifest injustice. *See* CR[3] 61.02; KRE 103(e). *See also Progressive Direct Insurance Company v. Hartson*, 661 S.W.3d 291, 298–99 (Ky. App. 2023); *Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021).

The Carltons point out that the trial court enjoined them to dig ditches or take other remedial action in the specific manner suggested by Combs in his testimony. They also assert the trial court's finding that water was spilling and seeping from the pond and saturating the Poynter property was based on Combs'

---

[3] Kentucky Rules of Civil Procedure.

-8-

opinion about the pond's causing a change in the subsurface water flow between the properties. They contend this led the trial court to conclude the Carltons' actions caused water damage to the Poynter property.

The trial court certainly considered Combs' testimony. And we cannot say this testimony had no effect on its decision. However, as the Poynters emphasize, the Carltons were allowed to cross-examine Combs and to present evidence of their own. Moreover, the trial court did not base its decision solely on Combs' testimony. In fact, the trial court opted to inspect the area at issue itself with the parties and/or their counsel present before making its ruling on liability.

In sum, while we cannot say the admission of Combs' testimony had no impact on the trial court's decision, we do not perceive that any error in the admission of this testimony resulted in manifest injustice. Whether or not Combs qualified as an expert or directly observed subsurface conditions on the Carlton property, Combs testified to his observations in working to address the Poynters' water problems and to his many years of professional experience addressing similar problems for other customers. Despite any criticisms which might be advanced for admitting Combs' opinion testimony with the benefit of hindsight, we discern no palpable error in the trial court's perceiving that Combs' testimony might be of some value in resolving the issues before it. So, we cannot fault the

trial court for not *sua sponte*[4] excluding all opinion testimony from Combs.  As the Poynters' brief states, the record shows Combs had "years of experience solving water drainage issues and constructing ponds" and "observed the site, presented two options for redress, and was subjected to cross-examination."  Thus, the trial court's admission of Combs' opinion testimony did not seriously affect the fairness of the proceedings and was not so "shocking" or "jurisprudentially intolerable" as to result in manifest injustice.  *Summe v. Gronotte*, 357 S.W.3d 211, 216 (Ky. App. 2011).  There was no palpable error.  CR 61.02; KRE 103(e).

We discern no reversible error in the trial court's handling of this unpreserved evidentiary issue.  Next, we address the Carltons' allegations of error about the trial court's factual findings and its statements about punitive damages in the judgment.

### Trial Court's Finding About the Carltons' Acting Intentionally to Divert Water to the Poynter Property is Supported by Substantial Evidence and Trial Court Did Not Specifically Award Punitive Damages

The Carltons argue the trial court clearly erred in finding they acted deliberately and maliciously in causing water to flow onto the Poynter property. They also contend that due to clear error in this finding (in their view), the trial

---

[4] *Sua sponte* means:  "Without prompting or suggestion; on its own motion."  BLACK'S LAW DICTIONARY (12th ed. 2024).

-10-

court's determination that punitive damages were warranted cannot stand. But as the appellee brief points out, the trial court did not specifically award punitive damages. Instead, the court awarded damages for the cost of repairing the Poynter property to its prior state and simply stated that the award of damages for repair costs was additionally or alternatively supportable as punitive damages.

Unlike the Carltons, the Poynters contend sufficient evidence supports the trial court's factual findings. They point to their own and other witnesses' testimony about current and former conditions on their property and observations about changes in conditions following Dennis' actions. (Other witnesses for the Poynters included the former owner of their property and the person who formerly mowed their yard.) The Poynters also refer to the matters deemed admitted due to the Carltons' failure to timely respond to requests for admissions.

Given the totality of the evidence, we discern no reversible error in the trial court's factual findings. This is especially true since we must give due regard to the trial court's unique opportunity to weigh the conflicting evidence and assess witness credibility. *See* CR 52.01; *Jones v. Livesay*, 551 S.W.3d 47, 50–51 (Ky. App. 2018); *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).

We recognize that Dennis testified to acting with good intentions to try to avoid damage to his own property and to not aiming to cause any damage to the Poynter property. But other witnesses testified to Dennis' actions (including

-11-

his digging ditches and building a pond on his property) causing water to flow into the Poynter property, especially after the pond filled up. The Poynters testified to these water-related actions occurring shortly after the Poynters lodged complaints about the Carltons' trash burning. Kelly Jo Poynter said she suspected these actions were retaliatory as the Carltons became less friendly to the Poynters after the trash burning complaint.

So, though the Carltons claim on appeal that any damage caused by Dennis's actions was at most due to negligent construction rather than malicious intent, the trial court could reasonably infer an intent to divert water onto the Poynter property based on the actions and the totality of the circumstances. *See Stieritz v. Commonwealth*, 671 S.W.3d 353, 361 (Ky. 2023) (factfinder may infer intent based on one's actions and the surrounding circumstances; people are presumed to intend the probable and logical consequences of their conduct; and a person's state of mind can be inferred from their actions before and after an alleged incident of misconduct). *See also Saint Joseph Healthcare, Inc. v. Thomas*, 487 S.W.3d 864, 871 (Ky. 2016). While another factfinder might weigh the evidence or assess witnesses' credibility differently, substantial evidence supports the trial court's factual findings concerning the Carltons' intentional diversion of water onto the Poynter property.

-12-

Moreover, despite the extraneous statement that the specific sum awarded in damages could additionally or alternatively be supported as punitive damages,[5] the trial court awarded damages which are compensatory in nature for the cost of repairs to bring the Poynter property back to its prior state. In fact, the exact sum of damages awarded ($70,806.76) matches the sum of the total cost of repairs set forth in the Poynters' Exhibit 30.[6]

In sum, we discern no reversible error in the trial court's resolution of the issues raised by the Carltons in this appeal—including its findings about the intentional nature of the Carltons' actions and its admission of Combs' opinion testimony.

---

[5] The Carltons assert in their reply brief that the trial court improperly conflated punitive and compensatory damages. They point out punitive damages serve a different purpose (retribution and deterrence) than that of compensatory damages (making the injured party whole to the extent that an award of money can do so). *See generally Osborne v. Keeney*, 399 S.W.3d 1, 20 (Ky. 2012). Still, despite the trial court's extraneous statement that the damages awarded could additionally or alternatively be supported as punitive damages, it made clear the Carltons were liable for actual damages to the real property. It further stated the sum awarded was based on the costs of repairing the Poynter property to its original state, which it perceived to reflect the diminution of the value of the property. *See generally* page 4–5 of judgment. Regardless of the extraneous statement about alternative support for the award as punitive damages, the trial court's award of damages to repair the Poynter property to its original state reflects the purpose of compensatory damages (making the injured party whole). *See Osborne*, 399 S.W.3d at 20.

[6] On page 4 of the judgment, the trial court states that the value of the Poynters' residence had been diminished by $70,806.70, explaining: "This amount is directly related to the costs of the repairs to the [sic] restore the home to its prior condition to achieve a fair market value." While there is a six-cent discrepancy between the amount mentioned on page 4 of the judgment and the amount the trial court ordered the Carltons to pay the Poynters (consistent with the Poynters' Exhibit 30) on page 6 of the judgment, the amount stated on page 4 appears to be a typographical error and the difference is extremely minimal.

-13-

Further arguments in the briefs which are not discussed herein have been determined to lack merit or relevancy to our resolution of this appeal.

## CONCLUSION

For the foregoing reasons, we **AFFIRM**.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Eric C. Eaton
A. Tanner Wright
Lexington, Kentucky

BRIEF FOR APPELLEES:

Winter R. Huff
Monticello, Kentucky